UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

OSCAR AGUILAR and                                   CIVIL NO. 13-1080 (ADM/JSM)
ROSA AGUILAR ,

       Plaintiffs,

v.                                                  <u>REPORT AND RECOMMENDATION</u>

MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC.;
MERSCORP, INC.;
THE BANK OF NEW YORK MELLON;
BANK OF AMERICA, N.A.,
and also all other persons, unknown
claiming  any right, title, estate, interest,
or lien in the  real estate described
in the complaint herein,

       Defendants.

       This matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 3].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).  Pursuant to this Court's Order dated September 6, 2013 [Docket No. 12], this Report and Recommendation is being issued based on the parties' written submissions.

       Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendants: (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title.  For

the reasons stated forth below, the Court recommends that defendants' Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.[1]

## I.   BACKGROUND

On April 3, 2013, plaintiffs sued defendants in state court.  Notice of Removal, Ex. Attach. 1 (Complaint) [Docket No. 1-1].  Defendants removed the suit to Federal District Court on May 8, 2013, pursuant to 28 U.S.C. §1332(a).  Notice of Removal [Docket No. 1].

The facts bearing on the motion to dismiss are as follows.  Plaintiffs entered into a note with Encore Credit Corporation ("Encore") on June 29, 2005, for property located in Andover, Minnesota ("Property").  Complaint, ¶ 6.  On the same date, plaintiffs executed a mortgage in favor of defendant Mortgage Electronic Registration Systems ("MERS").  Id., Ex. 1 (Mortgage).  The mortgage was recorded on September 2, 2005, with the Anoka County Recorder.  Id.  "Upon information and belief, Encore Credit Corporation originated the loan for delivery to [Bank of America ("BOA")] for securitization."  Id., ¶ 8.

Plaintiffs claim that no defendant or predecessor has the right to declare a default on the note, no defendant or predecessor can prove a default of the note under the

---

[1]   In the caption of the Complaint, plaintiffs also purport to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein." As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them;" the Court therefore recommends that all claims against them be dismissed.  See Sonsalla v. Mortg. Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

UCC, and plaintiff never borrowed any money from any defendant and has not defaulted on any obligation to any defendant.  Id., ¶ 7.

On October 2, 2008, Wilford, Geske & Cook, P.A. ("Wilford") drafted a Notice of Pendency, which empowered Wilford to foreclose on the Property and to bid on the property at the foreclosure sale.  Id., ¶ 23, Ex. 6 (Notice of Pendency).  Lawrence Wilford, as Vice President of MERS, executed the Notice of Pendency, and it was recorded with the Recorder of Anoka County on October 6, 2008.  Id.  Plaintiffs claim that "[u]pon information and belief," Lawrence Wilford did not have the legal authority to execute the October 2, 2008 Notice of Pendency as MERS did not have any interest in the Property due to the unrecorded assignment of mortgage to BOA.  Id., ¶ 24. Additionally, plaintiffs allege that there is no evidence in the record of Wilford's authority to execute the foreclosure documents on behalf of MERS, BOA or Mellon.  Id.

On August 30, 2011, BOA drafted an Assignment of Mortgage from MERS to defendant Bank of New York Mellon as Trustee for the Certificate Holders of the CWABS Inc., Asset-Backed Certificates, Series 2005-BCS ("Mellon").[2] Id., ¶¶ 9, 14, 15, Ex. 2 (Assignment of Mortgage).  Yomari Quintanilla, Vice President of MERS, executed the August 30, 2011 Assignment of Mortgage, and it was recorded in the Anoka County Recorder.  Id.  Plaintiffs claim that "[u]pon information and belief, Yomari Quintanilla did not have legal authority to execute the 08/30/11 AOM at the time she executed it. Yomari Quintanilla was actually an employee of BOA in August 30, 2011."  Id., ¶ 10, Ex. 3 (Affidavit of Private Investigator).

_____

[2]     CWABS Inc., Asset-Backed Certificates, Series 2005-BCS, was a trust created for the purpose of pooling mortgages for mortgage back securities and is registered with the Securities and Exchange Commission.  Id., ¶ 15.

Plaintiffs also allege that "[u]pon information and belief, Bank of America acquired its interest in the mortgage prior to the commencement of the foreclosure by advertisement in this case.  No assignment of mortgage from MERS to Bank of America appears in the records of the Anoka County Recorder."  Id., ¶ 11.  Further, "[u]pon information and belief there exists an unrecorded assignment of the mortgage executed by MERS and delivered to BOA.  Upon doing so, BOA held the power of sale contained in the Mortgage."  Id., ¶ 13.

Plaintiffs allege that a trust Pooling Service Agreement ("PSA") and a Loan Purchase Agreement ("LPA") required Countrywide Home Loan, Inc. ("Countrywide") to deliver to Mellon the original note, a certified copy of the mortgage, and an original assignment of the mortgage by the December 28, 2005 closing date on the trust.  Id., ¶¶ 17-19.  Mellon, as the trustee, certified to the trust certificate folders that the assignments were delivered as required by the PSA/LPA.  Id., ¶ 20.  These securitization documents required that assignments of the mortgage be prepared and delivered to and from: (1) Encore, as the originator of the loan, to Countrywide, as the seller; (2) from Countrywide to CWABS, Inc., as depositor; and (3) from CWABS, Inc. to Mellon, as trustee.  Id., ¶ 21.  None of these assignments appear on the record in violation of Minn. Stat. § 580.02, which requires that all assignments be recorded prior to the commencement of a non-judicial foreclosure.  Id., ¶¶ 21, 22.

On November 29, 2011, Wilford drafted a Notice of Pendency and Power of Attorney, which empowered Wilford, on behalf of Mellon, to foreclose on the Property and to bid on the Property at the foreclosure sale.  Id., ¶ 25, Ex. 7 (Notice of Pendency and Power of Attorney).  Edward D. Cook, Vice-President of Wilford, and as attorney-in-

4

fact for BOA "as successor by merger to BAC Home Loan Servicing LP fka Countrywide Home Loans Servicing LP as Attorney in fact" for Mellon, executed the November 29, 2011 Notice of Pendency and Power of Attorney, which was recorded with the Recorder of Anoka County on November 30, 2011.  Id.  Plaintiffs claimed that "[u]pon information and belief, Eric. D. Cook did not have the legal authority to execute the 11/29/11 POA at the time he executed it as Bank of America was not the of-record mortgage holder on November 29, 2011."  Id., ¶ 26.   Additionally, there is no evidence in the record of Wilford's authority to execute the foreclosure documents on behalf of MERS, BOA or Mellon, and there is no record evidence of any legal interest held by BAC Home Loan Servicing or Countrywide Home Loans Servicing.  Id., ¶¶ 26, 27.

Mellon, through Wilford, noticed a sheriff's sale for the Property and conducted the sale on September 26, 2012, and Wilford appeared at the Sheriff's Sale and exercised the power of sale clause in the mortgage by bidding the debt owed.  Id., ¶ 29. The Certificate of Sale and foreclosure record was recorded in the Anoka County Office of the Recorder.  Id., ¶ 29, Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).

Plaintiffs claimed that "[u]pon information and belief, prior to the Sheriff's Sale, MERS had transferred the power of sale to BOA through an unrecorded assignment of mortgage."  Id., ¶ 30.

On or about April 13, 2011, Wilford received constructive notice via an Order and Consent Decree between BOA  and the Office of the Comptroller of Currency ("OCC") that BOA had engaged in "unsafe and unsound" banking practices in conducting foreclosures, and that BOA had agreed to comply with MERSCORP Rules.  Id., ¶¶31, 32, Ex. 9 (Consent Order and Stipulation and Consent).   MERS amended its

Membership Rules, and Amended MERS Rule 8(e) "requires that foreclosures and other legal proceedings be at the direction and authority of the 'note holder' or the 'note owner's servicer.'" Id., ¶¶ 33, 35.

Plaintiffs asserted that Wilford at all times knew, or had reason to know, that the August 30, 2011 Assignment of Mortgage from MERS to Mellon, notices of pendency, and power of attorney are all void. Id., ¶ 36. Plaintiffs maintain that they are the owners of the fee title, the Sheriff's Certificate of Sale is void, and that the foreclosure was void. Id., ¶¶ 37, 38.

Plaintiffs alleged the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiffs assert a quiet title action seeking a determination regarding defendants' adverse interests in the Property. Id., ¶¶ 40-45. According to plaintiffs, in a quiet title action, the burden of proof is on the mortgagee asserting an adverse interest in the property and that defendants must prove their title to the Mortgage by preponderance of the evidence. Id., ¶¶ 43, 44.

In Count II, plaintiffs seek a declaratory judgment under Minn. Stat. § 555.02 that the August 30, 2011 Assignment of Mortgage, notices of pendency, and power of attorney are all void, and that plaintiffs remain the owner of the Property in fee title. Id., ¶¶ 47, 48.

In Count III, alleging slander of title, plaintiffs asserted that Wilford drafted and recorded documents that were false and not executed by legally authorized persons, and that Wilford knew, or should have known, that the documents were false because

unauthorized persons, without authority, executed the notices of pendency and the assignment of mortgage. Id., ¶¶ 49-54.

As relief, plaintiffs sought: (1) a determination of adverse interest in the Property; (2) a declaration that the Sheriff's Certificate of Sale, August 30, 2011 Assignment of Mortgage, notices of pendency, and power of attorney are all void; (3) a declaration that plaintiffs remain the owner of the Property in fee title; and (4) money damages. Id., Prayer for Relief.

Defendants moved to dismiss the Complaint, arguing that it failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). As to the quiet title claim, defendants contended that (1) it rests on conclusory and implausible theories that have no basis in fact or the law – i.e. that an unrecorded assignment of mortgage exists and that foreclosure documents related to the Property were executed by individuals who did not have the legal authority to execute them; (2) plaintiffs have no standing to challenge the Assignment of Mortgage from MERS to Mellon, the authority of individuals who signed the Assignment or various foreclosure-related documents, or to assert any claims based on the PSA or LPA; and (3) the claim is barred by the doctrine of unclean hands. Defendants' Memorandum in Support of Motion to Dismiss Complaint ("Def. Mem.") [Docket No. 5], pp. 1-16. In addition, defendants submitted that plaintiffs' slander of title claim fails because plaintiffs alleged no facts to support the elements of the claim, including false representation, publication with maliciousness, and reliance. Id., pp. 20-21. As for plaintiffs' declaratory judgment count, defendants asserted that a request for declaratory relief is not an actual cause of action – it is merely a remedy – and as plaintiffs' other substantive claims fail, this remedy must fail as well. Id., pp. 17-19.

For the reasons set forth below, the Court concludes that plaintiff fails to state a claim for relief and therefore, defendants' motion to dismiss should be granted.

## II.   STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned,   the-defendant-unlawfully-harmed-me-accusation."    Iqbal,   556 at 678 (internal quotation marks and citations omitted).   A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient.  Id. (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.   Fed. R. Civ. P. 12(d).   "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.   See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

With these standards in mind, the Court turns to the defendants' motion to dismiss.

III.    **DISCUSSION**

A.    <u>**Quiet Title**</u>

In Minnesota, "[a]ny person in possession of real property personally. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."   Minn. Stat. § 559.01. However, plaintiffs' assertion, (<u>see</u> Plaintiff's Memorandum in Opposition to Motions to Dismsiss [Docket No. 8] ("Pl.'s Mem."), p. 7) that they possess the Property and conclusory statements that defendants' adverse claims are invalid are insufficient to state a claim for relief.  <u>See</u> <u>Karnatcheva v. JPMorgan Chase Bank, NA</u>, 704 F.3d 545, 548 (8th Cir. 2013), <u>cert.</u> <u>denied</u> 134 S.Ct. 72 (2013) (affirming the district court's dismissal of the plaintiff's quiet-title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); <u>see</u> <u>also</u> <u>Yang Mee Thao-Xiong v. American Mortg. Corp.</u>, Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting <u>Novak v. JP Morgan Chase Bank, N.A.</u>, Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), <u>aff'd</u>, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

In addition, the Eighth Circuit in <u>Karnatcheva</u> has rejected that "burden of proof" argument advocated by plaintiffs, (Complaint, ¶ 43).  704 F.3d at 548.  As the court

10

explained in <u>Gharwal v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-685 (PJS/JSM), 2013

WL 4838904 (D. Minn. Sept. 11, 2013):

> <u>Karnatcheva</u> rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim. <u>Karnatcheva</u>, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; <u>Karnatcheva</u> is binding precedent, and this Court must apply it. The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." <u>Welk v GMAC Mortg., LLC</u>, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013). Here, plaintiffs quiet title claims are based only on conclusory statements and speculation, but no facts. The claim fails under Rule 12(b)(6).

<u>Id.</u>, at *3.

In the present case, plaintiffs' entire action rests on wholly unsupported statements about an unrecorded assignment of the mortgage to BOA and the alleged lack of legal authority by the individuals signing the Assignment of Mortgage and various foreclosure-related documents "on information and belief". <u>See</u> Complaint, ¶¶ 10, 11, 24, 26, 30. First, while it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim," <u>LaCroix v. U.S. Bank, NA</u>, Civ. No. 11-3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012), the Eighth Circuit has unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards described by the Supreme Court in <u>Iqbal</u> and <u>Twombly</u>. <u>See</u> <u>Karnatvcheva</u>, 704 F.3d at 548; <u>Sorem v. Bank of New York Mellon</u>, Civ. No. 13-290

(DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec.
Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn.
Aug. 9, 2013); Quale v. Aurora Loan Services, LLC, Civ. No.  13-621 (JNE/AJB), 2013
WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal
Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June
18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29
(DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013); Pope v. Fed Home Loan
Mortg. Corp., Civ. No. 12-3094 (SRN/JJG), 2013 WL 2251001, at *3 (D. Minn. May 22,
2013).

Here, the documents referenced in and attached to the Complaint show an
unbroken chain of title from MERS to Mellon via an assignment of the mortgage to
Mellon from MERS prior to the foreclosure proceedings, and a properly recorded a
Notice of Pendency and Power of Attorney to Foreclose.   Complaint, Exs. 2
(Assignment of Mortgage), 7 (Notice of Pendency and Power of Attorney), 8 (Sheriff's
Certificate of Sale and Foreclosure Record).  Thus, not only is there no factual support
for plaintiffs' bald assertions, the record shows the exact opposite—there were no
unrecorded assignments of the mortgage and the foreclosure was proper.

Second, plaintiffs' reliance on the Minnesota Supreme Court's decision in Ruiz v.
1st Fidelity, 829 N.W.2d 53 (Minn. 2013), (Pl.'s Mem., pp. 10-12), to avoid defendants'
argument that plaintiffs have no standing to challenge the foreclosure, (Def. Mem.,
pp. 11-16), cannot save their Complaint, as absent plaintiffs' sheer speculation, there
are no unrecorded assignments of the mortgage in this case.  In Ruiz, the Minnesota

Supreme Court held that "the plain meaning of 580.02(3)[3] requires all assignments of the mortgage to be recorded before the mortgagee has the right to engage in the process of foreclosure by advertisement." Id. at 57.   However, the facts in Ruiz are distinguishable from the present case, as the mortgagee-by-assignment in that case first began foreclosure proceedings, and then recorded another assignment and a notice of pendency on the same day as the first publication of the notice of sale. Id. at 54-55.   Unlike Ruiz, in this case, by the time the foreclosure by advertisement proceedings were commenced, the requisite recording of the Assignment of Mortgage to Mellon had already occurred.   "The purpose of the statutory recording requirements is to ensure that a mortgagor has notice and an opportunity to redeem."   Beecroft v. Deutsche Bank Nat'l Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App. 2011) (citing Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 495 (Minn. 2009)).   "Before a mortgage assignee . . . can foreclose by advertisement, its title to the mortgage must 'appear of record in such manner that evidence extraneous to the record will not be needed to put the title of the assignee of the mortgage beyond reasonable question.'" Id. (quoting Jackson, 770 N.W.2d at 495, quoting Soufal v. Griffith, 159 Minn. 252, 255,

---

[3]        Minn. Stat. § 580.02 provides in relevant part:

> To entitle any party to make such foreclosure, it is requisite:
>
> * * *
>
> (3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered; and

Minn. Stat. § 580.02, subd. 3..

198 N.W. 807, 808 (1924)).  Here, the purported unrecorded assignment did not prevent plaintiffs from redeeming the Property.

Moreover, <u>Ruiz</u> did not address the issue of standing, and it does not change the firmly-established law that states that plaintiffs lack standing to challenge (a) the assignment from MERS to Mellon, <u>see</u> <u>Kaylor v. Bank of America, N.A.</u>, Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (homeowners who were not parties to the mortgage assignment lack standing); <u>Novak</u>, 2012 WL 3638513, at *6 ("plaintiffs lack standing to challenge the assignment: they are not parties to the assignment and any dispute would be between the assignor and assignee"); <u>Gerlich v. Countrywide Home Loans, Inc.</u>, Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2-3 (D. Minn. Sept. 7, 2011) (plaintiff not a party to the assignment and, therefore, lacked standing to assert a claim regarding the assignment); (b) the foreclosure based on allegedly improperly executed foreclosure documents – i.e. documents signed by those without authority to execute an assignment of mortgage, notice of pendency or power of attorney; or (c) the foreclosure based on third-party documents such as a PSA or LPA relied upon by plaintiffs here.

As a result, even assuming that the individuals who executed the Assignment of Mortgage, Notices of Pendency or Powers of Attorney lacked signing authority,[4]

---

[4]    Of course, this assumption has no merit because the allegations that Quintanilla lacked authority to assign the mortgage from MERS to Mellon (Complaint, ¶¶ 9, 10, 14, 15), or Eric Cook had no authority to execute the Notice of Pendency and Power of Attorney, (Complaint, ¶¶ 25, 26), are completely devoid of factual support.  <u>See</u> <u>Simmer v. HSBC Bank USA, N.A.</u>, Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); <u>Segura v. Fed. Nat'l Mortgage Ass'n</u>, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, at *2 (D.

plaintiffs suffered no injury in fact as a result, and therefore, they have no standing to

pursue their claims. See, e.g., Quale, 2013 WL 3166584, at *1 (string citation omitted)

("Insofar as the Quales based their claims on the allegations that an individual lacked

authority to execute the assignment of mortgage, the Court rejects this argument

because the Quales lack standing to make such a challenge, and even if they did have

standing, their claims are fatally implausible and speculative."); Forseth v. Bank of

America, N.A., Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036 at *5 (D. Minn. May 24,

2013) ("The allegations regarding unauthorized signatures on every document related to

the foreclosure process for the Forseths' mortgage are similarly implausible and pure

speculation. But even if the signatures were unauthorized, the harm caused by the lack

of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of

---

Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Fed. Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.)); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn., May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations."); Stilp v. HSBC Bank USA, N.A., Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), aff'd, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted); Jackson, 770 N.W.2d at 491 (recognizing that mortgage assignments are executed for MERS by bank representatives).

America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims."); <u>Welk</u>, 2013 WL 2155463, at *4 ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations); <u>Stilp</u>, 2013 WL 1175025, at *4 ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted); <u>Jackson v. Mortgage Elec. Registration Sys., Inc.</u>, 770 N.W.2d 487, 491 (Minn. 2009) (recognizing that mortgage assignments are executed for MERS by bank representatives); <u>Kaylor,</u>, 2012 WL 6217443, at *5 (finding that even if individual who effectuated the assignment of the mortgage did not have

16

authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); <u>see also</u> <u>Altier v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 1:13-164, 2013 WL 6388521, at *3 (N.D. Fla. Dec. 6, 2013) ("To the extent that Plaintiffs challenge the validity of the Assignment either because Plaintiffs allege MERS does not have the authority to assign the Mortgage—or because the Assignment was executed by "robo-signers"—Plaintiffs do not have standing to raise a challenge to the validity of an assignment because Plaintiffs are not parties to the Assignment.") (citations omitted)).

Similarly, the alleged language of the PSA or LPA – even if true – cannot confer on plaintiffs the standing to challenge the validity of the foreclosure sale based on these documents, as plaintiffs were not party to them.[5]  <u>See</u> <u>Karnatcheva</u>, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory

---

[5]     Even if plaintiffs have standing to challenge the foreclosure sale based on the PSA-related documents, these documents do not provide reasonable basis to infer that the unrecorded assignments took place or when they took place.  <u>See</u> <u>Dunbar v. Wells Fargo Bank, N.A.</u>, 853 F. Supp.2d 839, 848 (D. Minn. 2012), <u>aff'd,</u> 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo. The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so. Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo.  As a result, dismissal is warranted.").  In fact, as defendants observed, the PSA "provides an explicit exception to any contractual obligation to create or record assignments for mortgages held through the MERS system."  Defendants' Reply Memorandum of Law in Support of Motion to Dismiss [Docket No. 10], p. 5 (citing Complaint, Ex. 5 (PSA), pp. 31-32).

judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); <u>Sorem</u>, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted);; <u>Stinson v. U.S. Bank, N.A.</u>, Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); <u>Sovis v. Bank of New York Mellon</u>, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012), (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); <u>Greene v. Home Loan Servs., Inc.</u>, Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

Finally, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands. Novak, 2012 WL 3638513, at *4 (in Minnesota, "[a]ctions to quiet title and determine adverse claims are equitable actions" and a plaintiff who seeks equity must come to court with clean hands), aff'd, 518 F. App'x 498 (8th Cir. 2013)); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013); see also Yang Mee Thao-Xiong, 2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage prevented her from seeking equitable relief); Stilp, 2013 WL 1175025, at *4 (D. Minn. March 20, 2013) ("Plaintiffs defaulted on their mortgage loan over four years ago.  They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).

Plaintiffs, having defaulted on their mortgage,[6] come to court with unclean hands and are precluded from pursuing a quiet title claim.  Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn. 1937)) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim).

For all the reasons stated above, the Court finds that defendants' motion to dismiss the quiet title actions against them should be granted.

---

[6]   While plaintiffs allege that they have not defaulted on any obligation to any defendant, (Complaint, ¶ 7), the allegations in the Complaint and documents attached to the Complaint regarding foreclosure proceedings indicate that plaintiffs had defaulted on the note by January 30, 2012. Id., ¶¶ 23, 25, 29, Exs. 6-8.

**B.**     <u>Slander of Title</u>

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages. <u>Paidar v. Hughes</u>, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted).   To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"   <u>Dunbar</u>, 709 F.3d at 1258 (quoting <u>Brickner v. One Land Dev. Co.</u>, 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); <u>see</u> <u>also</u> <u>Quevli Farms, Inc. v. Union Sav. Bank & Trust Co.</u>, 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").   The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. <u>Kelly v. First State Bank of Rothsay</u>, 177 N.W. 347, 347 (Minn. 1920).

Here, plaintiffs not only did not allege that Mellon acted with malice, but more significantly, they alleged no facts from which this Court could even infer that Mellon, through Wilford, made a false statement or acted maliciously, or that they relied on any statements made by Mellon.   Rather, apparently based on the Consent Decree between BOA and the OCC or the Amended MERS Rule, plaintiffs asserted that "Wilford knew or should have known" that unspecified documents were false and that these documents

were false because they were executed without legal authority. <u>See</u> Complaint, ¶¶ 49-54. These allegations standing alone fail to state a slander of title claim. <u>See Ko</u>, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); <u>Lara</u>, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority."). Moreover, for the reasons stated forth above as to plaintiffs' quiet title claim, plaintiffs' allegations that the recorded documents were not executed without proper authority fail to state a claim for relief.

Additionally, even assuming that documents recorded as to the Property are technically false, this does not amount to a cloud on the title of the Property where plaintiffs have clouded the title based on their default. <u>See Pope</u>, 2013 WL 2251001, at *4 ("An unauthorized assignment may be technically false, but it does not cloud the title to property on which the mortgagee has undisputedly defaulted. The only cloud on the title of the Popes' property is a cloud of their own making: they did not make the payments due under their mortgage and as a result, they lost their property through foreclosure.").

For all of these reasons, defendants' motion to dismiss plaintiffs' slander of title claim should be granted.[7]

**C.   Declaratory Judgment**

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[he is] left with a remedy in search of right."   Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

---

[7]     The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); see also Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich, 2012 WL 3612023, at *6, aff'd, 720 F.3d 979 (8th Cir. 2013).  Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.  Therefore, the Court recommends dismissal of the suit with prejudice.

IV.     RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 3] be **GRANTED**.

2.      This matter be dismissed with prejudice.[8]


Dated: December 19, 2013

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[8]      "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."   Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   That is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 2, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.